ANDREW T. HUYCK, as Administrator, etc., Respondent, v. THOMAS M. ANDREWS, Appellant.

The existence of an easement authorizing another to dam up and use the waters of a stream upon lands conveyed, is a breach of a covenant against incumbrances, and knowledge on the part of the grantee at the time of the conveyance or notice to him of the existence of the easement is no defense to an action for the breach.

*It seems* that any easement, except that of a public highway, is a breach of such a covenant; it protects the grantee against every other adverse right, interest or dominion over the land, and he may rely upon it for his security.

There is no distinction in this respect between incumbrances which affect the title and those simply affecting the physical condition of the land.

*Kutz* v. *McCune* (22 Wis. 628); *Memmert* v. *McKeen* (112 Penn. 315) disapproved.

In an action to recover damages for the breach of such a covenant, it appeared that B. owned an easement in a stream upon the land conveyed, *i. e.*, the right to erect and maintain a dam across it and to use all of its waters and to extend the dam then existing. At the time of the conveyance there was a dam across the stream which had been maintained for many years, and the waters were used to furnish power to a mill upon

113   81
116  505
116  508

113   81
120  465

113   81
133  346

113      81
172    ¹158

B.'s adjoining land. *Held,* that the grantee, although knowing of the existence of the mill and dam, was not charged with knowledge that B. had a paramount right to the exclusive use of the waters or a right to extend his dam.

Defendant alleged in his answer a mistake and asked to have the deed reformed by making the conveyance subject to B.'s easement. *Held,* that evidence of the value of the dam in connection with the mill was incompetent, either upon this issue or the question of damages; that the proper measure of damages was the difference between the value of the land without and with the easement.

(Argued January 28, 1889· decided March 12, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made the first Tuesday of May, 1886, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*Nathaniel C. Moak* for appellant. Facts of public notoriety relating to the subject of a contract must be presumed to have been known to the parties at the time of the making of the contract. (*Woodruff* v. *Woodruff,* 52 N. Y. 53; *Reynolds* v. *C. Ins. Co.,* 47 id. 597; *Gallagher* v. *Boden,* 4 East. Rep. 144, 147; *Memmert* v. *McKeen,* 112 Penn. St. 315, 316, 320; *Cathcart* v. *Bowman,* 5 id. 317; *Funke* v. *Voneida,* 11 S. & R. 109; *Patterson* v. *Arthurs,* 9 Watts, 152; *Wilson* v. *Cochran,* 48 Penn. St. 107; *Kutz* v. *McCune,* 22 Wis. 628.) An easement obviously and notoriously affecting the physical condition of land at the time of its sale is not embraced in a general covenant against incumbrances. (*Kutz* v. *McCune,* 22 Wis. 628; *Smith* v. *Hughes,* 50 id. 621; *Witbeck* v. *Corler,* 15 Johns. 482; *Jackson* v. *Hathaway,* Id. 447; *Haldam* v. *Sweet,* 55 Mich. 200.) It was error in the court to strike out the testimony of defendant's witness, Amos D. Briggs, that the value of this dam and water privilege, in connection with his mill, was $10,000. (*Scattergood* v. *Wood,* 79 N. Y. 263; *Holten* v. *Holten,* 5 W'kly. Dig. 14; *Weiting*

v. *Scherer*, 8 id. 392 ; *Wood* v. *Ins. Co.*, 6 Bos. 229 ; *Putzel*
v. *Van Brunt*, 40 Super. Ct. Rep. 501, 509 ; *Reynolds* v.
*Com. Ins. Co.*, 47 N. Y. 606 ; *Clark* v. *N. Y. L. Ins. Co.*, 64
id. 38, 39 ; *Hasbrook* v. *Paddock*, 1 Barb. 635 ; *Pitney* v.
*G. F. Ins. Co.*, 61 id. 340 ; *Springsteen* v. *Samson*, 32 N. Y.
707 ; *Stephenhorst* v. *Wolf*, 35 Super. Ct. 25 ; *Knapp* v.
*Warner*, 57 N. Y. 668 ; *Coyne* v. *Weaver*, 84 id. 386 ; *Briggs*
v. *Smith*, 20 Barb. 419 ; *Burns* v. *City of Schenectady*, 24
Hun, 10 ; *Merrit* v. *Seaman*, 6 N. Y. 168 ; *Fountain* v.
*Petter*, 38 id. 184; *Williams* v. *Sargent*, 46 id. 481 ; *Mul-
queen* v. *Duffy*, 6 Hun, 229 ; *Hubbard* v. *Russell*, 24 Barb.
409 ; *Jackson* v. *Cadwell*, 1 Cow. 622 ; *Cayuga Co. Bk.* v.
*Worden*, 6 N. Y. 745 ; *Jackson* v. *Hobby*, 20 Johns. 363 ;
*Elwood* v. *Diefendorf*, 5 Barb. 398, 406 ; *Whiteside* v.
*Jackson*, 1 Wend. 418.)

*Eugene Burlingame* for respondent. " Physical condi-
tions," amounting to an incumbrance upon real estate, or
knowledge on the part of the purchaser of their existence,
will not defeat a right of action on covenants against them in a
deed conveying the property. (Rawle on Covenants [5th ed.]
102, § 82 ; *Kellogg* v. *Ingersoll*, 2 Mass. 101 ; 2 Greenl. on
Ev. § 242 ; *Schriver* v. *Smith*, 100 N. Y. 471 ; *Shattuck* v.
*Lamb*, 65 id. 500 ; *Mohr* v. *Parmalee*, 43 Super. Ct. [J. & S.]
320 ; *Giles* v. *Dugro*, 1 Duer, 331 ; *Jerald* v. *Elly*, 51 Iowa,
321 ; *Beach* v. *Miller*, 51 Ill. 202 ; *Barlow* v. *McKinley*,
24 Iowa, 70 ; *Kostendader* v. *Pierce*, 37 id. 645 ; *Jerald* v.
*Elley*, 45 id. 322 ; *Butt* v. *Riffe*, 78 Ky. 352 ; *Burke* v. *Hill*, 48
Ind. 52 ; *Kellogg* v. *Malin*, 50 Mo. 496 ; 62 id. 429 ; *Prescott* v.
*Truman*, 4 id. 627 ; *Hubbard* v. *Norton*, 10 Conn. 422 ;
*Haynes* v. *Young*, 36 Me. 561 ; *Lamb* v. *Danforth*, 59 id.
324 ; *Pritchard* v. *Atkinson*, 3 N. H. 335 ; *Herrick* v.
*Moore*, 19 Me. 313 ; *Butler* v. *Gale*, 27 Vt. 739 ; *Parish*
v. *Whitney*, 3 Gray, 516 ; *Harlow* v. *Thomas*, 15 Pick. 66 ;
*Giles* v. *Dugro*, 1 Duer, 331 ; *Morgan* v. *Smith*, 11 Ill. 194,
199 ; *Ginn* v. *Hancock*, 31 Me. 42 ; *Michel* v. *Warner*,
5 Conn. 497 ; *Clark* v. *Conroe*, 38 Vt. 469 ; 2 Devlin on

Deeds, § 910; Dart's Law of Vendors and Purchasers [6th ed.] 886.)

EARL, J. In March, 1880, the defendant conveyed to Maria W. Huyck, plaintiff's intestate, by what is commonly known as a full covenant deed, certain land situate in the town of Coeymans, in the county of Albany, which, as described in the deed, contained the whole of Hawneycroix creek within its boundaries. Prior thereto Amos Briggs had received a deed of adjoining land on the east side of the creek, which conveyed to him with the land an easement, as follows: "The right to the use of the whole of the water of the said Hawneycroix kill or creek; also the right to erect and maintain a dam across said creek, and to connect same to the opposite bank thereof, at such place as the dam now is, and to extend the same, by an embankment or otherwise, from the bank at the water's edge to the high bank or hill west thereof, and the right also, from time to time, to go on to and upon the land on the opposite side of said creek, for the purpose of erecting and maintaining said dam or dams, and of using thereof the land for that purpose."

Upon the land thus conveyed to Briggs there was a paper mill, and there had been erected a dam across the creek to the westerly side thereof; and he and those under whom he held had used the waters of the creek for the purposes of that mill for many years. Subsequently to the conveyance to Mrs. Huyck, Briggs entered upon the land and built an embankment westerly from the edge of the creek to the high bank upon her land. Afterward she brought this action for the breach of the covenants contained in her deed by the existence and use of the easement which Briggs had in the land conveyed to her. She recovered, and the defendant has appealed to reverse her judgment. He claims that the easement owned by Briggs was open, visible and well known to Mrs. Huyck at the time she took her deed, and that, therefore, the covenants in the deed do not protect her against it. It is true that she knew that the paper mill and dam across the

creek were there, and that the waters of the creek had been used for many years for the purposes of the mill. But it does not appear that she knew the full extent of Briggs' easement, or that she had any knowledge whatever that he had any paramount right to the exclusive use of the waters of the creek or to maintain his dam where it was located as high as he wished. But even if she had such knowledge, that fact furnished no defense to this action.

The deed entitled her to a perfect title to all the land which it purported to convey, free from any incumbrance thereon, and it is no defense to her action that at the time she took it she knew of some incumbrance or some defect in the title. Proof of such knowledge would be quite important in an action brought by her grantor to reform the deed, but as a defense to an action upon the covenants contained in the deed, it is of no importance whatever. That the covenant against incumbrances is broken by an outstanding easement of any kind is perfectly well established by the authorities in this state, and there is no hint in any of them that knowledge by the grantee of the existence of the easement at the time of the conveyance makes any difference. An easement is an interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion or lawful use out of or over the estate of another. An incumbrance, within the terms of the covenant against incumbrances, is said to be "every right to or interest in the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance" (*Prescott* v. *Trueman*, 4 Mass. 627); and the breach of such a covenant takes place at the instant the conveyance is made.

There is in this state one exception to the rule that the existence of an easement constitutes a breach of the covenant against incumbrances, and that is in the case of a highway. It was held in *Whitbeck* v. *Cook* (15 Johns. 483), that it is not a breach of the covenants that the grantor was lawful owner of the land, was well seized, and had full power to convey that

part of the land was a public highway, and was used as such; and that decision has ever since been regarded as the law in this state. It was based upon the peculiar nature of highway easements and the general understanding with reference to them. SPENCER, J., writing the opinion, said: "It must strike the mind with surprise that a person who purchases a farm, through which a public road runs at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor and complain that the general covenants in the deed have been broken, by the existence of what he saw when he purchased, and what must have enhanced the value of the farm. It is hazarding little to say that such an attempt is unjust and inequitable and contrary to the universal understanding of both vendors and purchasers. If it could succeed, a flood-gate of litigation would be opened and for many years to come this kind of action would abound. These are serious considerations, and this court ought, if it can consistently with law, to check the attempt in the bud." These reasons are not applicable to other easements, and the rule of that case has not been applied to any other. While there was not in the deed there under consideration any covenant against incumbrances, yet the *ratio decidendi* is equally applicable to such a covenant; and since that decision it has always been understood in this state that such a covenant is not broken by the existence of a highway.

In *McMullin* v. *Woolley* (2 Lans. 394), it was held that the right to take water by means of a pipe laid beneath the ground from a spring on the premises conveyed, constituted a breach of the covenant against incumbrances. In *Roberts* v. *Levy* (3 Abb. Pr. [N. S.] 311), it was held that a covenant entered into between owners of adjoining city lots, for themselves and all claiming under them, to the effect that all buildings erected upon the lots should be set back a specified distance from the street on which the lots fronted, constituted an incumbrance upon the lots to which it applied; and if sub-

sequently conveyed by deed containing the usual covenant against incumbrances, a breach of the latter covenant arises the instant the deed ·is executed. In *Rea* v. *Minkler* (5 Lans. 196), it was held that the existence and use of a private right of way over the granted premises was a breach of warranty; and *Blake* v. *Everett* (1 Allen, 248), *Russ* v. *Steel* (10. Vt. 310) and *Wetherbee* v. *Bennett* (2 Allen, 428) are to the same effect. In *Scriver* v. *Smith* (100 N. Y. 471), where the owner of land upon a stream conveyed the same with a covenant of quiet enjoyment, and subsequently an owner below, under and by virtue of a paramount right, raised the height of a dam upon his land and thereby flooded the land conveyed, it was held that there was substantially an eviction and a breach of the covenant. In *Mitchell* v. *Warner* (5 Conn. 497), it was held that a pre-existing right in a third person to take water from the land conveyed is a breach of a covenant against incumbrances. In *Morgan* v. *Smith* (11 Ill. 194), it was held that an easement authorizing one to dam up and use the water of a branch running over the land conveyed, and to use the water of a spring upon it, is a breach of the covenant against incumbrances. In *Medler* v. *Hiatt* (8 Ind. 171) there was a conveyance of land, with covenants against incumbrances, through which there was a stream of water, and at the time of the convey-ance there was across the creek, a short distance below the land conveyed, a dam which backed the stream up so as to overflow a large quantity thereof. The action was brought upon prom-issory notes given for the purchase-price of the land. The defense set up was breach of covenant against incumbrances. To this defense the plaintiff replied, *inter alia*, that the defendant, when he purchased the land, knew of the existence of the dam and of the right to flow back the water; and to this reply the defendant demurred. The demurrer was over-ruled, and upon appeal the judgment upon the demurrer was reversed. The court said: " It is conceded that the action of the court in overruling the demurrer raises the main question in the case, and in support of that ruling it is insisted that, as

the appellant received a deed for the lands with full notice of the dam, and the right to continue it, the law presumes that he took the conveyance subject to the incumbrance. The rule of decision on this subject, as evinced by various authorities, is, to some extent, unsettled. None of the authorities, however, sustain the position that mere notice to the vendee at the time he receives his deed, of an existing incumbrance, excludes it from the operation of an express covenant against incumbrances. * * * The plaintiffs reply contains nothing from which a contract relative to the easement can be inferred. It is true the defendant knew of the incumbrance, but mere notice of it does not indicate even an intent to relinquish any remedy he might have under the covenants in his deed." In *Hovey* v. *Newton* (7 Pick. 29), the action was covenant upon a lease of water-works and buildings, with the whole control of the water in the pond, except the right which one Bangs had to take water in logs to his garden, and a similar right reserved to the lessor; and the court held that parol evidence was not admissible to prove that, in the intention of the parties to the lease, there was likewise an exception of the right which the county of Worcester had exercised for more than twenty years, of occasionally diverting part of the water for the purpose of cleansing the county gaol, and which diversion was well known to the parties at the time of making the lease. In *Mohr* v. *Parmelee* (11 J. & S. 320), a party-wall was wholly on one of two contiguous lots of land, yet subject to appropriation and use for all the purposes of a party-wall by the proprietor of the other by reason of a prior grant, and it was held that it constituted an incumbrance upon the land on which it stood; that when a title is incumbered by such an easement a right of action immediately accrues, and that whether the covenantee had or had not knowledge or notice of its existence is immaterial, both as regards his right of action and the question of damages. In 2 Greenleaf on Evidence (§ 242) it is said: "A public highway over the land, a claim of dower, a private right of way, a lien by judgment or by mortgage or any other outstanding, elder and better

title is an incumbrance, the existence of which is a breach of this covenant. In these and the like cases it is the existence of the incumbrance which constitutes the right of action, irrespective of any knowledge on the part of the grantee or of any eviction of him." In 2 Dart on Vendors and Purchasers (6th ed. 886), the following language is used: "Although the fact of the purchaser having notice of the defect cannot prevent the covenants for title from extending to it, since extrinsic evidence is inadmissible for the purpose of construing a deed, yet in an action to rectify the covenant that fact can be used as the basis of an inference that it could not have been the intention of the parties that the covenant should include a defect of which both parties were aware." To the same effect are the following authorities: *Beach* v. *Miller* (51 Ill. 207); *Barlow* v. *McKinley* (24 Iowa, 70); *Gerald* v. *Elly* (45 id. 322); *Butt* v. *Riffe* (78 Ky. 352); *Burk* v. *Hill* (48 Ind. 52); *Kellogg* v. *Malin* (50 Mo. 496).

In *Mott* v. *Palmer* (1 N. Y. 564), the action was to recover damages for breach of the covenant of seisin because the grantor did not at the time of the conveyance own certain fence rails constituting part of a fence, and BRONSON, J., writing one of the opinions, said: "That parol evidence was inadmissible to control the legal effect and operation of the deed is too plain a proposition to be disputed. If the plaintiff had been told at the time that Brown owned the rails, and more, if the rails had been expressly excepted by parol from the operation of the grant and covenant, it would have been no answer to the action. A deed cannot be contradicted in its legal effect any more than it can in its terms."

To support the contention of the appellant, his counsel has placed much reliance upon the cases of *Kutz* v. *McCune* (22 Wis. 628) and *Memmert* v. *McKeen* (112 Penn. St. 315). In *Kutz* v. *McCune* it was held that an easement obviously and notoriously affecting the physical condition of the land at the time of its sale, is not embraced in the general covenant against incumbrances. In *Memmert* v. *McKeen* it was

held that incumbrances are of two kinds — first, such as affect the title; and, second, such as affect only the physical condition of the property; that where incumbrances of the former class exist, the covenant is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title; that where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects, not the title, but the physical condition of the property, it is presumed that the grantee took the property in contemplation of such condition and with reference thereto. We do not yield assent to these authorities. They have no sanction in any of the cases decided in this state, and have no adequate foundation in principle or reason. They open to litigation, upon parol evidence in every action for the breach of the covenant against incumbrances caused by the existence of an easement, the question whether the grantee knew of its existence; and in every such case the protection of written covenants can be absolutely taken away by disputed oral evidence. We think the safer rule is to hold that the covenants in a deed protect the grantee against every adverse right, interest or dominion over the land, and that he may rely upon them for his security. If open, visible and notorious easements are to be excepted from the operation of covenants, it should be the duty of the grantor to except them, and the burden should not be cast upon the grantee to show that he was not aware of them. The security of titles demands that a grant made without fraud or mutual mistake shall bind the grantor according to its written terms. It should not be incumbent upon the grantee to take special and particular covenants against visible and apparent defects in the title, or incumbrances upon the land; but it should be incumbent upon the grantor, if he does not intend to covenant against such defects and incumbrances, to except them from the operation of his covenants. The distinction which is attempted to be made between incumbrances which affect the title and those which affect merely the physical condition of the land conveyed is quite illusory and unsatisfactory. Easements

not only affect the physical condition of the land, but they affect and impair the title. The owners of them have an interest in and dominion over the servient tenement, which frequently may largely impair its usefulness and value. The rule contended for would operate very unjustly and would be quite difficult to administer in many cases. In this case, while the grantee knew of the existence of the dam and of some use of the water, she did not know of the right to extend the dam from the edge of the water to her high land on the west side of the creek, nor did she know of the right Briggs had to use the entire water of the stream.

We are, therefore, of opinion that Mrs. Huyck was entitled to the protection of the covenant against incumbrances.

The defendant alleged in his answer that there was a mutual mistake, in that his conveyance was not made subject to the easement owned by Briggs; and, by way of counter-claim, he prayed relief that the deed be reformed. The issue thus tendered was tried and found against him. Upon the trial he called Briggs as a witness, and he was asked this question: " What is the fair value of your dam in connection with your mill? " This was objected to by the plaintiff as no measure of damages in the suit, and the objection was overruled. The witness answered: " It is worth $10,000, the dam and water privilege." Then plaintiff's counsel moved to strike out the answer " as incompetent and not a proper basis of damages," and the motion was denied. Defendant's counsel then stated that his " object in offering the evidence was to show that if this dam and stream were worth $10,000, the defendant was a fool, and plaintiff was a knave in paying $4,000 for this water privilege, together with fifteen acres of land." The judge then granted the motion, and the testimony was stricken out, and defendant's counsel excepted. It is now claimed that this evidence was improperly stricken out. Both parties were permitted to give evidence as to the value of the easement in connection with the land conveyed, and the rule for estimating plaintiff's damages, adopted by both parties, was the difference between the value of the

land without the easement and its value with the easement as an incumbrance thereon, and there was but little variation in the estimates of the witnesses. It was shown by competent evidence that if the deed to Mrs. Huyck had conveyed a perfect title to all the land described, without the easement, it would have been worth $4,000, and with the easement, $800 less. That evidence was pertinent both on the question of plaintiff's damages and upon the issue for the reformation of the deed. The consideration mentioned in the deed is $4,000, and hence it appeared that the plaintiff paid for the premises what they were worth, free from the incumbrance of the easement, and that circumstance was entitled to some weight upon the issue for the reformation of the deed. But what the dam and the water might be worth in connection with an expensive mill on the other side of the creek could have no bearing upon that issue. They might be worth $10,000 to Mr. Briggs, depending upon the value of his mill and the business connected therewith, that is, rather than have his mill and business destroyed he might be willing to pay that sum; but what he might be willing to pay under such circumstances would be no criterion of the real value of the easement. So far as that value has any bearing upon that issue the evidence stricken out would have been delusive, and might have been misleading. It was certainly too remote.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

All concur, except PECKHAM, J., not sitting.

Judgment affirmed.