RUSSELL H. HOADLEY et al., Respondents, *v.* HIPOLITO DUMOIS et al., Appellants.

(New York Superior Court—General Term, January, 1895.)

A consignee of goods carried under a subcharter who is compelled, in order to obtain his goods, to pay moneys due under the original charter to the owners of the vessel, may recover from the original charterer the amount so paid and the expenses of defending the action against him.

The liability of one who stands in the position of indemnitor to others who are also immediately liable to a third party may be fixed and determined in an action brought against the indemnitee by notice of the pendency of such action and an opportunity afforded to him to defend it.

In an action by a consignee to recover a debt of the original charterer which he has been compelled to pay in order to obtain his goods, it will be presumed that the freight has been paid to the subcharterer.

Misc.]        New York Superior Court, January, 1895.

APPEAL by defendants· from judgment entered on verdict of jury in favor of plaintiffs.

*Goodrich, Deady & Goodrich,* for appellants.

*Wheeler, Cortis & ·Godkin,* for respondents.

McADAM, J.   There was no dispute as to the facts, which are substantially as follows :

On August 5, 1890, the owners of the steamship *Albert Dumois* chartered her for a period of three years to the defendants.   On August 21, 1891, within the life of the first charter, the defendants chartered the steamship to the Honduras & Central American Steamship Company for two voy- ages from Belize, Central America, to New York. In October, 1891, the Honduras Steamship Company loaded the steamer and issued bills of lading for the cargo upon one of these voyages, the vessel arriving in New York November 10, 1891.   A portion of the cargo, consisting of coffee, hides, etc., was consigned to the plaintiffs ; the bills of lading were signed by the company in the usual form, and provided for the delivery of cargo to the plaintiffs on payment of the freight. Both of the charters contained the following clause : " The owner shall have a lien upon all cargoes and all subfreights for any amounts due under this charter, and the charterer shall have a lien upon the ship for all moneys paid in advance and not earned."

The master of the steamship refused to deliver the mer- chandise to the plaintiffs until he should be paid $1,433.53, which he claimed was due to the owners from the charterers of the steamer, and threatened that, if the sum was not paid, he would file a libel against the cargo to enforce the lien of the vessel and owners thereon.   The master, although appointed by the owners, was, by the terms of the subcharter, to be under the orders and directions of the subcharterers.

On November 18, 1891, a libel was filed by the master against the said merchandise.   The goods were bonded by the plaintiffs, and on April 5, 1893, a judgment was rendered by

the United States District Court in the suit for $1,652.95. The defendants had notice of the litigation, and were afforded an opportunity to defend plaintiffs therein, but took no part in such defense. The reasonable value of the services rendered in the legal proceedings, together with disbursements incurred in the defense of the suit, amounted to $388.74, and this sum was paid by the plaintiffs.

The judgment roll in the admiralty proceeding was put in evidence, from which it appeared that the master had filed the libel before referred to; that the plaintiffs intervened, claimed the cargo and gave security for the same and costs of the suit; that they put in an answer denying that the ship had any lien upon the merchandise for the unpaid balance of the charter money; that a decree was rendered in favor of the libelants for $1,652.95, which condemned the cargo and the claimants to pay the same; and that the plaintiffs paid the amount of the decree, of all of which the defendants had notice.

It is clear that the plaintiffs owed nothing to the defendants and were under no contractual obligation to them; yet, by force of process of law and the circumstances related, they were compelled to pay a debt of the defendants in order to obtain their cargo. Undoubtedly, where the plaintiff shows that he, either by compulsion of law or to relieve himself from liability, or to save himself from damage, has paid money which the defendant ought to have paid, the count for money paid to and for the defendant's use will be supported. 2 Greenl. Ev. § 114.

This rule has been applied in a great variety of cases. In *Wells* v. *Porter*, 7 Wend. 119, plaintiff, to redeem his property from a distress for rent, paid rent for which defendants were liable. Held, that plaintiff could recover the money thus paid. In *Lageman* v. *Kloppenburg*, 2 E. D. Smith, 126, the court said that the same rule had been frequently applied to payments by an undertenant of rent or other charges due to the superior landlord. *Grissell* v. *Robinson*, 3 Bing. N. C. 10, applied the same rule to the payment by plaintiff of an attorney's bill for which defendant was liable.

In Massachusetts the rule has been applied in mechanic's lien cases, where the owner of property has been compelled to pay liens upon it for which a contractor was liable to parties furnishing material and labor. *Hale* v. *Huse,* 10 Gray, 99; *Nichols* v. *Bucknam,* 117 Mass. 488. In the case last cited the court say (p. 491): " The plaintiff, in order to save his property from being sold on legal process, has been compelled to pay a debt which was really due from the defendant. Under such circumstances the law implies a request on the defendant's part, and a promise to repay; and the plaintiff has the same right of action as if he had paid the money at defendant's express request." See, also, *Exall* v. *Partridge,* 8 Term Rep. 308. And the same principle has been applied in *Dodge* v. *Zimmer,* 110 N. Y. 43; *Vermont, etc., R. R. Co.* v. *R. R. Co.,* 10 Law. Rep. Ann. 562; *San Gabriel Land Co.* v. *Witmer Co.,* 29 Pac. Rep. 500, and *Ticonic Bank* v. *Smiley,* 27 Maine, 225. A somewhat similar rule prevails where a party in order to obtain his goods is obliged to pay more than is due upon them, in which case recoveries are allowed on the theory of duress of goods. *Briggs* v. *Boyd,* 56 N. Y. 289; 4 Wait's Act. & Def. 488; Cow. Treat. § 307, subd. 6; Id. § 313; 6 Am. & Eng. Ency. of Law, 60, 74.

No contractual relation is necessary as a foundation for the action. It is because there is no express contract that the law raises an implied promise to pay the amount of the claim. Even in actions to recover money which a plaintiff has been obliged to pay to make good an injury caused by defendant's negligence the right of recovery is sustained, though there be no contractual relation between the parties. *Oceanic N. Co.* v. *Compania,* 134 N. Y. 461, 467; *City* v. *Montgomery,* 72 id. 65; *Village of Port Jervis* v. *Bank,* 96 id. 550; *Trustees* v. *Foster,* 62 N. Y. St. Repr. 639; *City* v. *Campbell,* 123 N. Y. 405. Upon the theory of these cases, the plaintiffs became subrogated to the cause of action which the owners of the vessel originally had against the defendants as charterers. *City* v. *Campbell, supra.*

The judgment in the admiralty court proves that the steam-

ship had a lien upon the cargo laden on board for the unpaid balance of charter hire due from the defendants. The defendants had notice of that suit, and an opportunity to defend, and if they had any defense they should have set it up in that case. Where one stands in the position of indemnitor to others who are also immediately liable to a third party, the indemnitor's liability may be fixed and determined in the action brought against his indemnitee by notice of the pendency of such action and an opportunity afforded him to defend it. *Village* v. *Bank*, 96 N. Y. 550, 557; *City* v. *Montgomery*, 72 id. 65; *City* v. *Robbins*, 2 Black, 418; *Seneca Falls* v. *Zalinski*, 8 Hun, 571.

The appellants urge that they could not have set up a defense in the suit against the cargo, because in admiralty a counterclaim cannot be pleaded. But any person interested in the subject-matter of the suit who has a counterclaim against the libelant can file a cross bill. This is strictly analogous to the cross bill under the old equity practice, and the court makes a final decree upon both.

The defendants also urge that there is no evidence in the case showing that the plaintiffs paid the freight due from them to the Honduras & Central American Steamship Company. But the law will presume, in the absence of proof to the contrary, that this freight was paid, and presumption is proof. The law presumes that every person is solvent, pays his just debts and obligations and performs all his contracts, and the burden of negativing this presumption is on him who alleges the contrary. Thus, if the Honduras & Central American Steamship Company had brought an action for the freight, they could have recovered only on an allegation of breach, *i. e.*, nonpayment, which would have to be affirmatively alleged. *Lent* v. *Railway Co.*, 130 N. Y. 504.

Assuming, therefore, as we must, that the plaintiffs have paid the entire freight moneys to the Honduras & Central American Steamship Company, as called for by the bills of lading, the plaintiffs either have a remedy against the defendants for the debt of theirs which plaintiffs were forced by

operation of law and the circumstances of the case to pay, or we have the inequitable result that the defendants, without any voluntary act of the plaintiffs and against their will, have obtained the benefit of $1,438.53 of their money. The plaintiffs have a legal right to recover from the defendants the amount paid, including the costs of defense to which the plaintiffs were put by the defendants' default. *Dubois* v. *Hermance*, 56 N. Y. 673; *Oceanic Co.* v. *Compania*, 134 id. 461.

The action is founded on equitable principles, somewhat upon the theory which holds that money in the hands of one person to which another is equitably entitled *ex æquo et bono* may be recovered in a common-law action for money had and received (*Roberts* v. *Ely*, 113 N. Y. 128; *Chapman* v. *Forbes*, 123 id. 532), and this principle seems to pervade all the cases.

The direction to find for the plaintiffs was right and the judgment appealed from must be affirmed, with costs.

FREEDMAN, J., concurs.

Judgment affirmed, with costs.