## CHARMAN v. HIBBLER.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. OPINION EVIDENCE—DAMAGES.
    Where the very question to be determined in an action is the difference between the value of certain real property, according as it was free from or subject to a given restriction, a witness cannot be allowed to give his speculative opinion as to what that difference would be.

2. COVENANTS—BREACH—DAMAGES.
    Certain premises, which were subject to a restriction against the sale of liquors, were conveyed to a subsequent grantee, by a deed which omitted the restriction and contained the usual full covenants. After the conveyance she built an hotel with a barroom, and a suit was successfully maintained against her for an injunction restraining the sale of liquors. Of the pendency of this suit she gave due notice to her grantor, who, however, did not appear therein. Her expenses for counsel fees and disbursements were more than $6,000. In an action brought by her to recover damages from her grantor for breach of covenants, she offered evidence to prove the expenses incurred in the prior suit. The evidence thereupon offered by the defendant to show that the plaintiff, before taking her deed, had actual knowledge of the covenant of restriction, and specifically offered merely in mitigation of damages, was rejected. *Held*, that as, if she had actual notice, her damage would be confined to the difference between the value of the property without restriction and its value with restriction, while, if she had no actual knowledge, she would be entitled to recover the expenses of the prior suit, the exclusion of the evidence constituted reversible error.

Appeal from trial term, Westchester county.

Action by May Charman against Maria E. Hibbler, individually and as executrix. From a judgment in favor of plaintiff and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John J. Crawford, for appellant.
Everett P. Wheeler, for respondent.

GOODRICH, P. J. The action was brought to recover damages for the breach of the covenants of a deed executed by the defendant to the plaintiff, in February, 1895, whereby, for the consideration of $9,000, the defendant conveyed to the plaintiff a parcel of vacant land at Mamaroneck, in the county of Westchester, being parts of certain lots on a map of Larchmont Manor. The premises comprise

about 11 lots, 25 by 100 feet each, and are situated on the north side of a curved road called "Park Avenue," which faces Long Island Sound. The plaintiff erected a private hotel on the premises, and opened it for guests. The hotel contained a barroom.

The defendant derived title to the premises which she conveyed to the plaintiff through two deeds from the Larchmont Manor Company to Thompson J. S. Flint, executed and recorded in 1873 and 1875, respectively. These deeds contained the covenant of restriction set out hereafter, but the plaintiff alleged that she was not aware of such restriction when she purchased the property, and that she informed the defendant of her intention to erect a private hotel. The defendant denied both of these allegations, and alleged that the plaintiff had full knowledge of the covenant of restriction when she took her title. The deed to the plaintiff contained the usual covenants of seisin, of quiet enjoyment, of freedom from incumbrances, for further assurance, and of warranty.

Larchmont Manor consists of a quasi park, which was laid out in 1873, since which time many wealthy people have purchased lots and erected costly summer residences thereon. There are two pleasure clubs in the immediate vicinity,—the Hoboken Turtle Club and the Larchmont Yacht Club. These facts affect in some degree the character and value of property in the vicinity. In 1896, William Murray, who had purchased other property in the manor, commenced an action against Mrs. Charman, the plaintiff, alleging that she was bound by the covenant of restriction, and praying that she be enjoined from using her premises for any business purposes whatever, and particularly from using the same for a barroom, restaurant, saloon, or boarding house. This action was based upon a covenant contained in deeds whereby the Larchmont Manor Company, the plaintiff's predecessor in title, conveyed the plaintiff's lot and a large number of other lots to purchasers, all of which deeds contained the following covenant of restriction:

"And the said party of the second part, for himself, his heirs and assigns, do hereby covenant to and with the said Larchmont Manor Company, its successors and assigns, that the said premises hereinbefore described shall not at any time hereafter be used or occupied for the erection or maintenance of any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail, or other iron factory, or any manufactory of gunpowder, glue, varnish, vitriol, ink, soap, candles, starch, or turpentine, or for the tanning, dressing, or preparing of skins, hides, or leather, or for any brewery, distillery, laboratory, manufactory, stable, barn, cow house, piggery, livery stable, race course, theater, circus, or place for the exhibition of wild animals or gymnastic feats, cabinet makers' or carpenters' shops, hat shop, or other shop, barroom, lager-beer saloon, restaurant, ale house, liquor saloon, store, warehouse, or any erection known as nuisances, or any noxious or dangerous use, purpose, trade, business, or establishment, or for any business purpose whatsoever."

There was also a further covenant that the restrictions should run with the land, and be inserted in all subsequent conveyances, and that the company and its assigns might prosecute suits to prevent the violation of such covenant of restriction against any person who might at the time of the violation be an owner of any part of the property.

Mrs. Charman appeared in and defended the action, gave due notice of its pendency to the present defendant, and requested her to defend the same, which she refused to do. A judgment was entered against Mrs. Charman, restraining her from selling or disposing of intoxicating liquor on her premises, to any persons except the guests of her house and their invited friends, such liquors to be sold only with their meals and in their private rooms. She was not enjoined from keeping a private hotel. In the defense of this action eminent counsel were retained, whose bill for services and disbursements amounted to $6,349.52. There was evidence that such amount was reasonable and fair, and no contradictory evidence. In the case at bar the jury awarded the plaintiff, as damages, $7,000, and from the judgment entered thereon the defendant appeals.

The main contention upon which the defendant claims reversible error is that the court admitted, over her objection, incompetent evidence as to the damages sustained by the plaintiff, to wit:

"Q. State what your judgment is as to the difference in value in February, 1895, between the parcel of land marked 'Hibbler,' shown on the survey (Exhibit C), and described in the deed (Exhibit A), between the property if it was free and clear from all incumbrances and the property subject to the restriction of this covenant. * * * A. At the time it was sold? Q. At that date,—1895."

The answer was that the lots were worth about $1,800 per city lot, of 25 by 100 feet, without restrictions, and $800 per lot with such restrictions. This would amount to $11,000.

Whatever the state of the law was before the case of Roberts v. Railroad Co., 128 N. Y. 455, 28 N. E. 486, was decided, it cannot now be doubted that under that decision the evidence was incompetent and inadmissible. The question there passed upon by the court of appeals was similar to the one here in question. Peckham, J., writing the opinion, said (page 464, 128 N. Y., and page 487, 28 N. E.):

"The precise and specific question which is to be determined by the court and jury is by this interrogatory placed before the witness for his opinion and decision. To permit it to be asked and answered is, beyond all question, against the great mass of authority in this and other states."

As the opinion above referred to contained an elaborate and exhaustive review of previous decisions upon the question, it is not necessary to refer to other authority, and we cannot do otherwise than hold that the admission of the evidence referred to constitutes reversible error.

The second contention of the defendant relates to the exclusion of evidence in mitigation of damages. The plaintiff had offered evidence to prove as damages the expenses incurred by her in the Murray suit, and the defendant called witnesses to prove that the plaintiff before she took her deed had actual notice of the covenant of restriction. The counsel for the defendant specifically stated that the evidence was offered merely in mitigation of damages, but the court rejected the evidence, and the defendant excepted. We think that this exclusion was error. Huyck v. Andrews, 113 N. Y. 81, 20 N. E. 581, is authority for the proposition that notice of an incumbrance does not take it out of the covenant of the deed; but this does not

militate against the principle stated in Roberts v. Levy, 3 Abb. Prac.
(N. S.) 311, where there was a covenant in a deed restricting the erec-
tion of buildings within eight feet of the street line, and the plain-
tiff had excavated and built beyond this limit, and, being compelled
to take down a wall built thereon by him, sought to recover his dam-
ages of the covenantor, under the covenants of his deed. The gen-
eral term of the common pleas held (page 316):

"The fact that the agreement creating the restriction and easement was a
matter of record, and that plaintiff had constructive notice thereof, is not
enough to affect or defeat his remedy. I am of the opinion that it would be
otherwise if actual notice had been brought to him or his agent at the time
he took the deed. If the plaintiff at that time actually knew of this agree-
ment, evidence of such fact should be received by the referee hereafter ap-
pointed in mitigation of damages. Such evidence is not a contradiction of
the deed, although it does not except the easement in question. Rickert v.
Snyder, 9 Wend. 416. In fact, I think that with actual knowledge the recovery
of the plaintiff should be nominal only, not extending even to the moneys laid
out by him in the attempted improvement of the eight feet, or the expenses
incident to a change of his plan, because, under such circumstances, he went
on in his own wrong."

Mr. Rawle, in his Covenants for Title (section 205), says that:

"A strong current of American authority has set in favor of the position that
the covenants for seisin, for right to convey, and perhaps against incum-
brances, are what are called covenants in præsenti; if broken at all, their
breach occurs at the moment of their creation. The covenant is that a par-
ticular state of things exists at that time, and, if this be not true, the delivery
of the deed which contains such a covenant causes an instant breach."

If the plaintiff had actual notice of the covenant of restriction, the
case becomes one of damages only, and the measure of damages is
merely the difference between the value of the property without re-
strictions and its value with restrictions. Doctor v. Darling, 68 Hun,
70, 22 N. Y. Supp. 594. In that case the defendant alleged in his
answer, and on the trial offered to show by oral evidence, that the
grantee knew of the limitations upon the right to use the premises
when she took her deed; but this, under the plaintiff's objection, was
excluded, and the court held that this was not error; but the evi-
dence was not offered in mitigation of damages, as it was in this
action.

In the present case proper notice of the pendency of the action was
given, so that the question was to be determined upon that condition
of affairs; and the court charged the jury that:

"When a person buys property under such a deed as this, and somebody
comes in and prevents him from building a house for business or other pur-
poses, and he relies upon his deed, and a suit is brought against him for vio-
lating the restrictions, and in defending his rights under the deed he spends
money, then he is entitled, if he gives notice to the party from whom he has
purchased that the suit is going on and that such party is interested in de-
fending the deed (as was done in this case), to reasonable compensation for
the services legitimately rendered in the defense of that suit."

There was no exception to this part of the charge.

It is impossible, however, to decide what elements entered into
the present verdict, and determined the amount of damages at $7,000
and interest. We cannot say that it embraces any part, or what

part, of the costs or legal expenses incurred by Mrs. Charman in defending the Murray action, nor what amount for the difference between the unrestricted value and the restricted value,—whether it embraces both, or whether it also embraced interest. To allow any amount for interest, on an unliquidated amount of damages in action on contract, is not permissible. Doctor v. Darling, supra.

On the other hand, if it shall appear on a new trial that the plaintiff had no actual notice of the restriction, and gave the defendant notice of the pendency of the Murray action, the court will be bound by the principle laid down in many authorities in respect of the legal expenses, which embrace several items: First, the taxable costs of the Murray suit, $701.67; second, defendant's disbursements therein, $647.85; and, third, counsel fees, $5,000,—amounting in all to $6,-349.52. Mr. Rawle, in the treatise above referred to (section 198 et seq.), discusses the varying authorities upon this subject, and says that the taxed costs of such suit should be allowed. As to counsel fees:

"In some cases, however, counsel fees have been denied under any circumstances; it being considered that 'these expenses, incurred by the party for his satisfaction, vary so much with the character and eminence of counsel that it would be dangerous to impose such a charge upon an opponent.' "

He further adds:

"A consideration of these rather conflicting cases would seem to suggest, as a rule to be deduced from them, that the plaintiff's right to recover counsel fees as part of his costs should, in general, be limited to cases where he has properly notified the party bound by the covenant to come in and defend the title, but that the neglect or silence of the latter should inure to the benefit of the plaintiff rather than to his own."

It is settled, however, in this state, that, in an action like the present, the costs and counsel fees resulting from a proper defense of such an action as the Murray case are recoverable where proper notice of the pendency of such action has been given. In City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, Ruger, C. J., writing the opinion, says (pages 411, 412, 123 N. Y., and page 937, 25 N. E.) that, among other things, the measure of damages in such cases includes, not only the loss sustained by the injured party and paid, but also such incidental expenses as may have been incurred in defending the action. Hoadley v. Dumois, 11 Misc. Rep. 52, 31 N. Y. Supp. 853, was affirmed in the court of appeals, on the opinion of the general term of the superior court, which had laid down a similar rule upon the authority of Dubois v. Hermance, 56 N. Y. 673, and Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461, 31 N. E. 987. Such, also, is the opinion expressed in 3 Sedg. Dam. § 983, where it is said: "It is generally held that counsel fees reasonably incurred in maintaining or defending an action for possession may be recovered;" and I can see no difference in principle between an action for possession and an action on the covenant for restriction, for it is held that restrictions are incumbrances, within the meaning of the covenant against incumbrances. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Trustees v. Lynch, 70 N. Y. 440.

As the evidence offered to show that the plaintiff had actual notice of the covenant of restriction was offered only in mitigation of damages, it was error to exclude it.

We express no opinion on the question whether the court should have charged, as requested by the defendant, that, as the judgment in the Murray suit applied to property of the plaintiff other than that conveyed to her by the defendant, the plaintiff could only recover a proportionate part of her legal costs and expenses of that suit.

For the two errors stated the judgment must be reversed. All concur, except BARTLETT, J., who concurs in the result, he expressing no opinion as to whether counsel fees are recoverable or not.

Judgment and order reversed, and new trial granted, costs to abide the event.