■ RAJCHANDRA CORPORATION et al., Appellants-Respondents, v TOM SAWYER MOTOR INNS, INC., et al., Respondents, and JOSEPH R. MAISANO, Appellant-Respondent, et al., Defendants. (Action No. 1.) RAJCHANDRA CORPORATION et al., Appellants, v COUNTY OF CHEMUNG, Respondent. (Action No. 2.) TOM SAWYER MOTOR INNS, INC., Respondent-Appellant, v RAJCHANDRA CORPORATION et al., Appellants-Respondents, et al., Defendants. (Action No. 3.) — Cross appeals (1) from an order of the Supreme Court at Special Term (Ellison, J.), entered July 25, 1983 in Chemung County, which, in action No. 1, denied plaintiffs' motion for summary judgment, partially granted defendant Joseph R. Amisano's cross motion for summary judgment, and granted the cross motion of defendants Tom Sawyer Motor Inns, Inc., James P. Schwartz and Doris B. Clark for leave to serve an amended answer, (2) from an order of said court, entered July 25, 1983 in Chemung County, which, in action No. 3, denied cross motions for summary judgment by plaintiff and defendants Rajchandra Corporation, Magan R. Patel and Sharda Patel, and (3) appeal from an order of said court, entered August 2, 1983 in Chemung County, which, in action No. 2, denied plaintiffs' motion for summary judgment and partially granted defendant's cross motion for summary judgment.

From 1949 to 1979, James Schwartz controlled and operated Tom Sawyer Motor Inns, Inc. (hereafter Tom Sawyer) in the City of Elmira. In 1979, the motel operated by Tom Sawyer was listed for sale with a New Jersey real estate broker. Magan R. Patel, an officer and employee of Rajchandra Corporation, reviewed the motel's financial information, expressed an interest in the property, and viewed it on December 13 and 14, 1979. Patel returned to the motel on December 20, 1979, remaining there overnight. During this visit, he retained an attorney, Joseph Amisano, to represent Rajchandra Corporation in the purchase of the inn. It is alleged that Amisano misrepresented to Patel that he was a lifelong resident of, and familiar with, Chemung County.

On December 28, 1979, Patel, on behalf of his corporation, executed a purchase and sale agreement in the amount of $490,000, of which $420,000 was to be secured by two bonds and mortgages on the premises. Tom Sawyer's former attorneys prepared the contract which provided for conveyance of the property by a full covenant warranty deed with lien covenant. Prior to signing the agreement and closing, the prospective purchasers learned that the County of Chemung operated a

sewage disposal plant on property adjacent to the motel. Patel briefly visited the plant and was informed by a county employee that there were no present odor problems, but that the previous summer had been "one of the worst * * * as far as odors were concerned". Patel returned to the motel and questioned Tom Sawyer's manager, Doris B. Clark, regarding the matter. Clark avers that, after noting that there had been problems, she "informed Mr. Patel that we had been involved in a lawsuit over the sewer plant, that it was a matter of common knowledge, informed him of some corrective work which the sewer district had done since the litigation, and informed him further that there were plans pending to build a new sewage treatment plant at a different location and to convert the facility adjacent to the Tom Sawyer Motor Inn to a pumping station". Later that afternoon of December 28, 1979, the parties consummated the sale. Tom Sawyer delivered to the purchasers a deed containing a warranty of title, covenant of quiet enjoyment and a lien covenant, rather than a full covenant warranty deed as provided for in the contract; Rajchandra Corporation took possession and commenced operation of the motel on January 1, 1980.

Two days later, Patel read an article in a local newspaper alluding to prior litigation between Tom Sawyer and the county concerning the sewage plant. The last two paragraphs of that article referred to a contention by Tom Sawyer that offensive odors from the sewage treatment plant had damaged the motel's business and that a Court of Appeals decision in 1973 had granted Tom Sawyer a $376,000 settlement. Although this was apparently brought to attorney Amisano's attention, he did not advise the purchasers that the settlement was in fact a prior judgment in favor of Tom Sawyer, secured in a suit brought against the county (see *Tom Sawyer Motor Inns v County of Chemung,* 39 AD2d 4, affd 32 NY2d 775) in which Tom Sawyer had recovered $376,336.61 on September 5, 1973 as "compensation for a servitude on the land, precluding future recovery by [Tom Sawyer] or its successors or grantees". That judgment was neither recorded nor indexed as part of the record chain of title of the motel property.

Beginning in February of 1980, Patel repeatedly complained to the sewer district of foul odors affecting the motel now being run by Rajchandra Corporation; he finally discovered on July 8, 1981 that the 1973 judgment gave the county the right to subject the motel property to those noxious fumes. Shortly thereafter, Rajchandra Corporation, Magan R. Patel and Sharda Patel (hereafter plaintiffs) instituted two lawsuits: action No. 1 was directed at Tom Sawyer, James P. Schwartz, Doris B. Clark and

others for fraud and breaches of the contract of sale, covenant of quiet enjoyment and warranty of title, and against attorney Amisano for fraud and negligence; and action No. 2, which charges the county with negligence in failing to record the judgment, fraud and nuisance. In June of 1982, Tom Sawyer commenced action No. 3 to foreclose on Rajchandra Corporation's unpaid mortgage.

Confronted with a variety of motions, several seeking summary assistance in each of the three actions, Special Term granted only the following relief: (1) the cross motion by Tom Sawyer, Schwartz and Clark in action No. 1 for leave to serve an amended answer asserting affirmative defenses of laches, waiver and estoppel, and requesting reformation; (2) attorney Amisano's cross motion in action No. 1 to dismiss the first cause of action against him for fraud; and (3) in action No. 2, the county's cross motion for summary judgment dismissing the first and second causes of action for negligence and fraud, respectively, and its motion to consolidate actions No. 1 and 2. The within appeals and cross appeals ensued.

Initially, we address, and dismiss, the complaint against the county in action No. 2. Section 297-b of the Real Property Law is dispositive of plaintiffs' contention that the county negligently failed to record the prior judgment. That section permits but does not mandate the filing of judgments "affecting the title to or possession, use or enjoyment of real property". Since the county was not required to file the 1973 judgment, it breached no duty to plaintiffs by neglecting to do so; accordingly, the first cause of action in negligence was properly dismissed. Nor do we find any factual support in the record for the claim that the county permitted or participated in a fraudulent sale of the motel by Tom Sawyer to plaintiffs. And, as for the nuisance cause of action, that is barred by the doctrine of *res judicata* (see *Boomer v Atlantic Cement Co.,* 26 NY2d 219, 228); the 1973 judgment gave the county a servitude over the motel property which is enforceable against the grantees of Tom Sawyer, the other party to that earlier action, irrespective of the grantee's knowledge or notice of that judgment. In short, the county's servitude is superior to plaintiffs' interest in the conveyed property.

The presence of that servitude also underlies plaintiffs' claim against Tom Sawyer, Schwartz and Clark in action No. 1 for breach of the covenant of quiet enjoyment and warranty of title. It is, as plaintiffs observe, settled law that a grantee is entitled to rely on covenants given by the grantor. Consequently, "knowledge by the grantee of existing easements or incumbrances or defects in the title conveyed to him does not defeat his

right to recover damages for the breach of the covenants contained in the deed" (*Callanan v Keenan,* 224 NY 503, 508; see *Spruce Hill Homes v Brieant,* 288 NY 309, 310-311; *Huyck v Andrews,* 113 NY 81, 84-85).[*] Since it is, however, equally well established that a covenant of quiet enjoyment and a warranty of title, which are virtually the same, "can be broken only by an eviction, actual or constructive, from the premises conveyed, or some portion thereof" (*Scriver v Smith,* 100 NY 471, 477), factual issues remain here as to whether the servitude materially impairs the value of the premises and interferes with plaintiffs' use and possession thereof and, as such, constitutes a constructive eviction (*id.*). Plaintiffs' reliance on evidence of the motel's value which was submitted more than 10 years ago in Tom Sawyer's nuisance action against the county (*Tom Sawyer Motor Inns v County of Chemung, supra*) is inconclusive of the present existence of a material impairment. This warrants denial of summary judgment on the cause of action in action No. 1 for breach of the covenant of quiet enjoyment and warranty of title.

Factual questions also preclude summary disposition of plaintiffs' fraud claim in action No. 1. Plaintiffs have not established reasonable, detrimental reliance on any alleged misrepresentations (*Reno v Bull,* 226 NY 546, 550). Before executing the contract of sale and the deed, plaintiffs undertook to examine the motel's financial and operating reports, visited the property and discovered the existence of the sewage plant, all of which lends substance to the argument that triable issues exist regarding plaintiffs' reliance on the alleged misrepresentations and the detrimental impact, if any, of those representations. There are also unresolved material factual issues in action No. 1 with respect to the cause of action based on Tom Sawyer's alleged breach of those representations, warranties and agreements expressed or implied in the agreement of sale which survived the closing. It is unclear whether the contract provision, wherein the seller warrants as free from encumbrances the property "used by it in or in connection with its business and to be transferred hereunder", was intended to encompass real property; on the very day that a contract calling for a full covenant warranty deed was executed, plaintiffs, without adequate explanation, accepted a deed which did not contain a warranty against encumbrances, thus raising an issue as to whether the parties intended the contract warranty against encumbrances to be superseded and extinguished by the deed.

---

[*] Such knowledge may, however, be "quite important" in resolving defendants' counterclaim for reformation (*Huyck v Andrews,* 113 NY 81, 85), a pleading amendment hereinafter allowed.

Special Term's denial of plaintiffs' motion for summary judgment in action No. 1 was therefore appropriate. And since the answer of plaintiffs in action No. 3 precisely tracks their complaint in action No. 1, the very same factual impediments requiring denial of summary judgment in action No. 1 justified Special Term's rejection of summary judgment in action No. 3.

We also affirm Special Term's granting of the cross motion by Tom Sawyer, Schwartz and Clark in action No. 1 to amend their answer to assert the defenses of laches, waiver and estoppel, and to counterclaim for reformation of the contract. For the most part, the affirmative defenses sought to be asserted are based on Patel's knowledge and lack of action during the 20 months which passed between the closing date of December 28, 1979 and the commencement of this suit in September, 1981. CPLR 3025 (subd [c]) directs that leave to amend be freely granted. Here, the litigation is immature, having not yet even reached the discovery phase. Additionally, there is no claim by plaintiffs that the amendments to the answer will unduly prejudice them.

In action No. 1, with respect to plaintiffs' claims against attorney Amisano for fraud and negligence, we find unresolved questions of fact warrant denial of his motion to dispose of those two causes of action by summary judgment. Plaintiffs maintain that Amisano related in their initial meeting that he was a lifelong resident of, and familiar with, Chemung County; that this was untrue; and that they relied on this misrepresentation to their detriment. Both parties have submitted affidavits and other documentary evidence from persons with personal knowledge which dispute Amisano's assertions of familiarity with the county and plaintiffs' reliance thereon. Special Term thus incorrectly granted Amisano summary judgment on the fraud cause of action.

We are, however, in agreement with Special Term that summary judgment on the negligence claim against Amisano is inappropriate. Plaintiffs' sworn allegations that Amisano failed to discover the 1973 judgment despite plaintiffs' expression of concern about the newspaper report of prior litigation between Tom Sawyer and the county lends support to their negligence theory.

Order entered July 25, 1983 in action No. 1 modified, on the law, without costs, be reversing so much thereof as granted defendant Joseph R. Amisano's cross motion for summary judgment dismissing the first cause of action; said cross motion denied in its entirety; and, as so modified, affirmed.

Order entered July 25, 1983 in action No. 3 affirmed, without costs.

Order entered August 2, 1983 in action No. 2 modified, on the law, without costs, by reversing so much thereof as denied defendant County of Chemung's cross motion for summary judgment dismissing the third cause of action; said cross motion granted in its entirety and the complaint is dismissed; and, as so modified, affirmed. Kane, J. P., Weiss, Yesawich, Jr., and Levine, JJ., concur.

Casey, J., concurs in part and dissents in part in the following memorandum. Casey, J. (concurring in part and dissenting in part). Since I can perceive no basis for imposing liability on defendant attorney Joseph Amisano, I believe the causes of action alleged against him, both for fraud and negligence, should be dismissed. Both these claims stem from the legal representation that Amisano furnished to plaintiffs Rajchandra Corporation, Magan R. Patel and Sharda Patel (hereafter plaintiffs) in regard to their purchase of Tom Sawyer Motor Inns, Inc. The gist of the fraud claim is Amisano's alleged representation that he was a long-time or lifetime resident of Chemung County and, therefore, familiar with the subject property and fully competent to represent plaintiffs in regard to the purchase thereof. Plaintiffs allege that these representations were false in fact because Amisano had resided in Syracuse from 1975 to 1979 and that if he had resided in Chemung County, as he represented, he would have known from newspaper articles and local conversation of the May 15, 1972 judgment imposing a continuing servitude or permanent encumbrance on the motel which subjected it to the noxious odors emanating from the county's adjoining sewage plant, and requiring the county's payment of the sum of $376,336.61 to defendants, the then owners of the property. Plaintiffs also contend that Amisano would have known that this judgment bound the successors and grantees of the motel property as well.

The gist of the negligence claim is Amisano's alleged failure "to advise the plaintiffs of any detrimental aspect pertaining to Tom Sawyer Motor Inn or the proposed transaction". In regard to the negligence claim, it is significant and undisputed that Amisano is not charged with negligence or malpractice in the preparation and review of the contracts, deeds and other documents necessary for the closing or for giving bad advice, but only in failing to ascertain and to report to his clients the existence of a servitude, which did not have to be recorded (Real Property Law, §§ 290, 291) and did not appear in the chain of title to the property, and for that reason was not revealed in the abstract

extension search conducted by the title company. Amisano was not consulted until December 20, 1979, and at that time plaintiffs had already made a $10,000 earnest money deposit on the property. The closing took place on December 28, 1979, only a week after Amisano had been retained as counsel. Plaintiffs nowhere claim that Amisano actually knew about the servitude and concealed that fact from them.

Their cause of action in negligence distills to Amisano's failure to read the local newspapers and to keep abreast of local gossip, and that if he had done so he would have known about the servitude. In my view, these are nebulous predicates on which to base a claim of negligence. An attorney should be held responsible for actual knowledge (this attorney is not so charged) or charged with such constructive knowledge that is or should have been revealed by the competent performance of his professional duties and responsibilities to his clients. It is the height of speculation to conclude that had this attorney been a lifelong resident of Chemung County, as he represented, he would definitely have known or been chargeable with the knowledge of the servitude, either from reading the newspaper articles or from the speech of the people in the community.

Special Term sustained the negligence cause of action against Amisano on the limited ground that he "was notified by the plaintiffs of the $376,000 settlement with the county several days after the closing". Plaintiffs obtained this information from a newspaper article that appeared in the January 3, 1980 edition of the local paper about the sale of the motel to plaintiffs. The article contained a reference to the prior litigation regarding the sewage plant. Assuming this information was passed on to Amisano on or shortly after this date, it still forms no basis for a claim of negligence. At that time, the closing had been concluded and the title to the property transferred. What Amisano was supposed to do with this knowledge, received by him some six days after the closing had been held, is not alleged. Nor is it alleged how plaintiffs were damaged or disadvantaged by what Amisano did or failed to do when plaintiffs told him about this newspaper report. In my opinion, the negligence claim is completely insufficient and Special Term erred in sustaining it in any respect.

In regard to the cause of action in fraud, it is my further view that the representations of Amisano's residency, even if made, were immaterial and that no justifiable reliance could be based thereon. The cause of action in fraud is, therefore, also legally insufficient for its failure to comply with CPLR 3016 (subd [b]), as found by Special Term.

Therefore, I would affirm Special Term's dismissal of the first cause of action, which alleges fraud, and reverse Special Term's denial of the motion to dismiss the fifth cause of action, which alleges negligence. Since I believe that both causes of action should be dismissed, I dissent from so much of the holding of the majority that concludes otherwise. In all other respects I agree with the majority.